869 F.2d 558
 8 UCC Rep.Serv.2d 728
 Michael L. DOYLE, Plaintiff-Appellee,
v.
TRINITY SAVINGS AND LOAN ASSOCIATION, TSL Service
Corporation; STM Mortgage Company, Defendant-Appellant,
and
Federal National Mortgage Association, Defendant.
Michael L. DOYLE, Plaintiff-Appellee,
v.
TRINITY SAVINGS AND LOAN ASSOCIATION, TSL Service
Corporation, STM Mortgage Company, Defendant-Appellee,
and
Federal National Mortgage Association, Defendant-Appellant.
 Nos. 86-2236, 86-2309.
 United States Court of Appeals,
Tenth Circuit.
 March 9, 1989.
 
 Jack S. Dawson and Janice M. Dansby, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, Okl., for plaintiff-appellee.
 Linda G. Scoggins and Jeffrey H. Contreras, Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for appellant Federal Nat. Mortg. Ass'n.
 Carl Hughes, Michael G. McGuire, and J.W. Coyle, III, Hughes & Nelson, Oklahoma City, Okl., for appellants Trinity Sav. & Loan Ass'n, TSL Service Corp., and STM Mortg. Co.
 Before McKAY, BARRETT, and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Michael L. Doyle brought this action against Trinity Savings & Loan Association (Trinity) and the Federal National Mortgage AssociationMA asserting that he is entitled to damages and cancellation of a note and real estate mortgage as a result of the fraudulent alteration of the note. Judgment was entered for Doyle on all claims. Both defendants appeal, and we affirm.[1]
 
 
 2
 The relevant undisputed facts are briefly as follows. Doyle executed an adjustable rate promissory note in favor of Trinity, secured by a real estate mortgage with an attached adjustable rate rider. Trinity's first attempt to sell the note and mortgage to FNMA was rejected because the instruments had been incorrectly completed by placing on the face of the note, as the initial interest rate, the lower rate of interest upon which the initial monthly payment was based (11.375%), instead of the actual rate of interest accruing for one year from the date of execution (15.875%).[2] The note ultimately purchased by FNMA showed corrections and alterations, adjacent to which appeared Doyle's initials. Doyle asserted that these alterations were made without his knowledge or consent after he had executed the note and before FNMA purchased it, and that his initials were forged. FNMA, which had no reason to believe that Doyle had not approved and initialed the changes, purchased the loan in good faith. A jury awarded Doyle actual and punitive damages against Trinity, and the trial court ordered cancellation of the note and mortgage against FNMA.
 
 
 3
 The primary issues raised by defendants on appeal are whether Doyle is entitled to both damages and cancellation of the note and mortgage; whether Doyle established the elements of fraud; whether the note and mortgage were materially altered; and whether FNMA is a holder in due course.[3]
 
 
 4
 While the appeal of this case was pending, the Oklahoma Court of Appeals decided Goss v. Trinity Sav. & Loan Ass'n, No. 67,298 (Okla.Ct.App. filed Aug. 23, 1988). In Goss, which involves facts virtually identical in all relevant respects to those underlying the instant suit, the court considered the above issues and decided them in favor of the plaintiff. That opinion was released for publication by the Oklahoma Court of Appeals. Under Rule 1.200 C.B. of the Rules of Appellate Procedure in Civil Cases, Okla.Stat. tit. 12, ch. 15, app. 2 (1988), such an opinion, although without precedential effect, may be considered persuasive. In examining Oklahoma law in a diversity case under these circumstances, this court has held that "in the absence of a state supreme court ruling, the federal court must follow an intermediate state court decision unless other authority is convincing that the state supreme court would decide otherwise." O'Neil v. Great Plains Women's Clinic, Inc., 759 F.2d 787, 790 (10th Cir.1985). We have found no such contrary authority, and will therefore follow Goss in assessing defendants' arguments.
 
 
 5
 Defendants contend that Doyle failed to establish the elements of fraud. Defendants erroneously base their argument on an analysis of fraud in the inducement. The appropriate test as set out by the court in Goss, however, is whether a plaintiff can show the existence of overreaching by the defendant in a bad faith effort to gain an unfair advantage. See Goss, (citing Holliman v. Ed Grier Volkswagen, Inc., 554 P.2d 117 (Okla.App.1976)). The same analysis applies here.
 
 
 6
 Defendants' argument that the alterations were not material is likewise precluded by Goss. There the court held that an alteration virtually identical to that at issue here "changed the legal rights and liabilities of the parties and therefore was a material alteration" under Okla.Stat. tit. 15 Sec. 239 (1966).[4] Id. As a result, the note and mortgage were ordered cancelled under section 239. The district court's conclusion of materiality and its cancellation of the note and mortgage in the present case were correct under this analysis.
 
 
 7
 Defendants contend that cancellation was improper here because Doyle presented no evidence showing that Trinity had authorized its agent to make the alterations. This argument was expressly rejected in Goss:
 
 
 8
 "In responding to Plaintiffs' allegation that Trinity gave one of its employees authority to alter the interest rate on the note, Trinity contends that no such evidence was presented to prove it gave its employees authority to alter the note. It contends even if its employees did make such an alteration, it resulted in a mere spoliation, which would not void the instruments, not a material alteration, which would in fact, vitiate the instruments. Nonetheless, it is settled that an employer is liable for tortious acts of his employee even though the actions exceed the authority conferred or were willfully or maliciously committed if such acts are incidental to and in furtherance of the business of the employer. Dill v. Rader, 533 P.2d 650 (Okla.App.1975). Because the alteration by an unknown employee of Trinity allowed Trinity to sell the note and mortgage to FNMA, Trinity benefitted from its employee's actions, and it furthered Trinity's business. The court properly found a material alteration, not a mere spoliation, existed in the note and mortgage."
 
 
 9
 Id.
 
 
 10
 Finally, we reject FNMA's argument that it is a holder in due course of the note and thus entitled to enforce it despite the prior unauthorized alterations. This note, like the one in Goss, pegs the interest rate to an external index, so that the amount payable cannot be determined from the instrument itself. "Because the note does not contain a promise to pay a sum certain, the note itself cannot be a negotiable instrument pursuant to [Okla.Stat. tit. 12A, Sec. 3-104 (1981) ]. Therefore, FNMA cannot be accorded the status of a holder in due course." Id. at ---- (citing Shepherd Mall State Bank v. Johnson, 603 P.2d 1115 (Okla.1979)).
 
 
 11
 Defendants' remaining arguments, to the extent we have not expressly addressed them, are foreclosed by Goss and its application to this case. Accordingly, in reliance on the Goss opinion, which has resolved the issues raised in this appeal adversely to defendants and which we are obligated to follow, we affirm.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 An adjustable rate mortgage such as this one contains negative amortization features and graduated payments. During the early part of such a loan, the payments are often not enough to cover the interest accruing on the principal. The shortage is added to the outstanding principal balance, resulting in negative amortization. The adjustable rate of interest is determined by reference to the monthly average yield on U.S. Treasury securities
 
 
 [3]
 Defendants also raise two evidentiary issues which we have carefully considered and do not find persuasive
 
 
 [4]
 "The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act." Okla.Stat. tit. 15, Sec. 239 (1966)